UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INNOVATIVE PANEL TECHNOLOGIES, INC.,<br>Plaintiff,<br>v.<br>NUDO PRODUCTS, INC.,<br>Defendant. | Case No. 3:26-cv-5185<br><br>ORDER ON MOTION TO DISMISS |

## I. INTRODUCTION

In this case, Plaintiff Innovative Panel Technology, Inc. (Innovative[1]) claims that Defendant Nudo Products, Inc. (Nudo) misappropriated trade secrets, interfered with Innovative's contracts and business expectations ("tortious interference"), and was unjustly enriched by its actions. Dkt. 1. Innovative is seeking damages and injunctive relief. *Id*. at 7. Nudo moves to dismiss Innovative's claims arguing that the information Innovative shared with Nudo does not qualify as a trade secret, that the parties' line of credit agreement precludes the interference claims, and that its actions were justified. Dkt. 16.

[1] The Court refers to Plaintiff as "Innovative" except in the instances where the parties are being quoted. The parties use the acronym IPT.

The Court GRANTS the motion to dismiss Innovative's misappropriation and tortious interference claims. Innovative fails to establish the information shared with Nudo was a trade secret and Nudo's actions were permitted by the line of credit agreement between the parties. The Court DENIES the motion to dismiss Innovative's unjust enrichment claim. It appears from the pleading that the parties did not have a contract governing their working relationship, and Innovative's allegations against Nudo allow the unjust enrichment claim to survive at the pleading stage. The Court gives leave to Innovative to amend its complaint to plead more facts in support of all its claims.

## II. BACKGROUND

Innovative is a company that develops and sells industrial panel products used for flooring and structural surfaces. Dkt. 1 ¶ 3.2. Innovative works with Nudo, a company that manufactures those products. *Id.* ¶ 3.6. Innovative was founded in 1999 by Michael Thornton. *Id.* ¶ 3.1. The two companies have worked together since Innovative was founded. *Id.* ¶ 3.6. Innovative claims it "entrusted Nudo with elements of its confidential trade secrets, including among other things its customer list and details regarding customer projects, designs, and specifications." *Id.* Innovative alleges that the relationship between the two companies "and the context in which IPT's trade secrets were shared, made clear that Nudo was to maintain the secrecy of that information and limit its use to fulfilling" Innovative's needs. *Id.* ¶ 3.7.

Nudo extended a line of credit to Innovative as part of the business relationship. *Id.* ¶ 3.8. In the line of credit agreement, Nudo reserved for itself the "right to cease extension of credit without notice"; "change the terms of the credit extended" at its sole discretion and without notice; "re-evaluate the credit worthiness of [Innovative]"; and "refuse to make future advances." Dkt. 17-1 at 2.

Thornton died October 28, 2025. Dkt. 1 ¶ 3.9. Soon after, Innovative informed Nudo about Thornton's death. *Id*. According to Innovative, Nudo then began soliciting business directly from Innovative customers. *Id*. ¶ 3.10. Nudo canceled Innovative's line of credit and informed Innovative that it needed to prepay for all outstanding orders despite a previous agreement giving Innovative 60 days to pay Nudo after fulfilling an order. *Id*. ¶ 3.11. Finally, Nudo no longer accepted orders from Innovative. *Id*. Innovative claims Nudo's actions resulted in losing its contracts with loyal customers and being unable to accept new orders. *Id*. ¶ 3.12.

Innovative brings five causes of action against Nudo, which include (1) misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq*., (2) misappropriation of trade secrets under RCW 19.108, *et seq*., (3) tortious interference with contracts, (4) tortious interference with business expectancy, and (5) unjust enrichment. *Id*. at 4–7.

Nudo seeks dismissal with prejudice, claiming Innovative's theories are not supported by the contract between the companies. Dkt. 16.

## III. JURISDICTION

The Court has federal question jurisdiction over this matter because Innovative's complaint contains a claim that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* Dkt. 1 at 4 (alleging a claim under the federal Defend Trade Secrets Act). The Court has both supplemental and diversity jurisdiction over the state law claims because Innovative alleges the amount in controversy exceeds $75,000 and that the action is between citizens of Washington and Illinois. 28 U.S.C. §§ 1332(a)(1), 1367; Dkt. 1 ¶¶ 1.1–1.2, 2.1.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of

Civil Procedure 12(b)(6), the Court may dismiss a complaint for “failure to state a claim upon which relief can be granted.” Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint “does not need detailed factual allegations,” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face,’” *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). “A claim is facially plausible ‘when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.’” *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court “must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party,” *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not “accept as true a legal conclusion couched as a factual allegation,” *Twombly*, 550 U.S. at 555. “[A] plaintiff’s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.” *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Iqbal*, 556 U.S. at 678. The court may only consider the pleading, documents attached to the pleading, documents incorporated in the pleading, and matters of judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## V. DISCUSSION

**A. Innovative does not allege facts to maintain its misappropriation claims.**

Innovative claims Nudo misappropriated its trade secrets—its customer list with the accompanying information—in violation of federal and Washington trade secret law. Dkt. 1 at 2–3. In a misappropriation claim under the Defend Trade Secrets Act, "a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); 18 U.S.C. §§ 1836, 1839(5). The framework is the same for establishing a misappropriation claim in either Washington or Illinois. *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, Case No. C18-1543JLR, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. Apr. 15, 2019); *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613 (N.D. Ill. Feb. 28, 2023).[2]

A trade secret includes

> "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, . . . if—(A) *the owner thereof has taken reasonable measures to keep such information secret*; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

18 U.S.C. § 1839(3) (emphasis added). Misappropriation includes the use of a trade secret "without express or implied consent" by a person who had reason to know they had a duty to maintain secrecy or limit use of the trade secret. *Id.* § 1839(5).

Nudo claims Innovative does not allege facts showing it took reasonable secrecy measures to establish the customer information qualified as a trade secret. Dkt. 16 at 9–12. Nudo

[2] Nudo claims that Illinois law should apply based on the parties' contracts but concedes that choice of law on this issue does not affect the outcome. Dkt. 16 at 9 n.3.

also claims Innovative does not establish that Nudo had reason to know it had a duty to maintain secrecy or to limit its use of the shared information. *Id.*

"Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (citations omitted). "Reasonable efforts include confidentiality agreements with those who will have access to the information, or at least notice that the disclosed information is a trade secret." *AT&T Commc'ns of Cal., Inc. v. Pac. Bell*, 238 F.3d 427, at *2 (9th Cir. 2000) (unpublished). "Where a plaintiff alleges specific efforts it has taken to protect the business information, that is sufficient to withstand a motion to dismiss." *Nielsen Consumer LLC v. Circana, LLC*, Case No. 24 CV 10946, 2025 WL 815666, at *8 (N.D. Ill. Mar. 13, 2025) (citation omitted) (concluding the plaintiff satisfied the secrecy measure element by "detailing some of the processes it employs including both internally and externally when licensing the data to third parties").

Internal secrecy measures, such as those requiring an employee to maintain confidential information, do not qualify as reasonable secrecy measures when the issue involves sharing private information with an external third party. *AT&T Commc'ns*, 238 F.3d at *2 ("It is not enough to show, as the [Plaintiffs] have, detailed intra-firm confidentiality measures when the alleged breach occurs through a voluntary arrangement with a third party"). Alleging "general and vague protective measures" also is insufficient to establish a party took reasonable measures to maintain trade secrets. *Olson Kundig, Inc. v. 12th Avenue Iron, Inc.*, Case No. C22-0825-JLR, 2022 WL 16961374, at *6 (W.D. Wash. Nov. 16, 2022) (internal quotation marks omitted) (concluding that the party failed "to meet the 'secrecy' element because, not only did it fail to plead any facts to [establish that it took reasonable efforts to] protect the alleged trade secrets, it actually pled facts showing it disclosed its trade secrets to a third party"). For a duty to maintain

secrecy to exist, the recipient of shared information must have notice of its proprietary nature and restrictions on its use. *AT&T Commc'ns*, 238 F.3d at *2 (insufficient for the Plaintiffs "to call the billing data proprietary now, if [the Plaintiffs] did not call it proprietary when the parties first contracted-at length-for [sic] the mass transfer of such valuable information").

Here, Innovative alleges it "consistently made efforts to maintain the secrecy of these trade secrets, prohibiting disclosure except as necessary to service client needs. IPT's trade secrets have never been publicly disclosed or disseminated, and have been securely maintained at IPT's corporate headquarters." Dkt. 1 ¶ 3.5. Furthermore, Innovative asserts that

> Nudo was provided access to IPT's trade secrets in confidence, solely for purposes of enabling IPT to satisfy customer needs. The nature of the relationship between IPT and Nudo, and the context in which IPT's trade secrets were shared, made clear that Nudo was to maintain the secrecy of that information and limit its use to fulfilling the needs of IPT and its customers.

*Id.* ¶ 3.7. Absent from these claims are allegations that Innovative communicated to Nudo that the customer information it shared was confidential and that Nudo's use of that information was restricted. *See id.*

Innovative contends that whether a party took reasonable secrecy measures is a question of fact precluding dismissal at this stage. Dkt. 19 at 7. The case Innovative relies on does not support its position. *See Palantir Techs. Inc. v. Abramowitz*, Case No. CV 10946, 2022 WL 2952578 (N.D. Cal. Jul. 26, 2022). In *Palantir*, the plaintiff alleged that conversations took place between the parties discussing the proprietary nature of the information being shared. *Id.* at *5. In denying summary judgment, the court stated, "[o]ral representations of confidentiality alone have been held to preclude summary judgment on this issue." *Id.* (citing *VBS Distrib. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020)). Conversely, Innovative does not allege it discussed confidentiality with Nudo at any point. *See* Dkt. 1 at 2–4. Instead, Innovative states

only that the context of the companies' relationship shows the information was understood to be confidential and impliedly restricted its use to fulfilling Innovative's orders. *Id.* ¶ 3.7.

Because Innovative does not show it took reasonable efforts to maintain secrecy of the shared information, it does not show it possessed a trade secret, which is required for a misappropriation claim to survive a motion to dismiss. *See InteliClear*, 18 U.S.C. at 657–58. The Court GRANTS Nudo's motion to dismiss the misappropriation claims. The Court need not address Nudo's argument claiming that Innovative fails to identify how its alleged trade secret was misappropriated. *Olson Kundig, Inc.*, 2022 WL 16961374 at *6. However, dismissal without prejudice is appropriate in cases where the plaintiff has not had an opportunity to amend its complaint. *See id*. The Court grants leave to Innovative to amend its complaint to include more specific allegations regarding its efforts to maintain the secrecy of the information it provided to Nudo.

**B. Innovative does not allege facts to maintain its tortious interference claims.**

Innovative claims that Nudo interfered with its contracts and business expectations by causing its customers to end their contract with Innovative and contract directly with Nudo. Dkt. 1 ¶¶ 6.3, 7.3. The framework for tortious interference claims in Washington and Illinois are similar. The law in both states requires a valid contract or business expectancy; defendant's knowledge of the contract or business expectancy; and evidence of intentional interference causing a breach of contract or disruption of business expectancy and damages. *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 539, 556 (N.D. Ill. Jan. 20, 2022); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). As for the differences between the two laws, under Illinois law, the law requires a showing of "*unjustified* inducement of a breach of the contract" and "subsequent breach of contract caused by defendant's *wrongful* conduct," *Brinley Holdings*, 580 F. Supp. 3d at 539 (citations omitted and

emphasis added), while Washington law requires a showing "that defendants interfered for an *improper purpose* or used improper means." *Leingang*, 131 Wn.2d at 157 (citations omitted and emphasis added). To summarize the differences in language, both laws require some type of unjustified, improper, or wrongful conduct. "Exercising one's legal interests in good faith is not improper interference." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 132, 279 P.3d 487 (2012) (citation omitted).

In its motion to dismiss, Nudo attaches the line of credit agreement between the two companies and claims that the contract is incorporated by Innovative's reference to the agreement in its complaint because the "complaint indisputably concerns a relationship [the agreement] govern[s] and IPT does not question the document[']s authenticity." Dkt. 20 at 6; Dkt. 17-1. Nudo avers the contract reserves for itself the right to cancel the line of credit for any reason and refuse to accept new orders. Dkt. 16 at 14–15. Innovative contends that the Court may not rely on the terms of the line of credit agreement because it was not included as part of the complaint. Dkt. 19 at 4–5.

A complaint incorporates documents by reference when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted). Here, Innovative did not include the line of credit agreement in the complaint, but did reference the agreement, stating, "As part of their business relationship, Nudo extended to IPT a line of credit, allowing it to finance customer orders and structure its cashflow." Dkt. 1 ¶ 3.8. Innovative also claimed that Nudo sabotaged Innovative's business by canceling the line of credit and imposing other requirements when ordering products. *Id.* ¶ 3.11.

Innovative argues that its complaint does not depend on the contents of the line of credit agreement because "Nudo breached duties independent of any written agreement between the parties and does not incorporate any contract by reference." Dkt. 19 at 5. Innovative does not provide any authority to support its position; its argument is unpersuasive. *Knievel* supports Nudo's position that the complaint and Nudo's inclusion of the line of credit agreement in its motion to dismiss allows the Court to consider the terms of the agreement.[3]

The line of credit agreement allows Nudo to change the terms of the credit at Nudo's "sole discretion and without notice." Dkt. 17-1. Nudo also "reserve[d] the right to cease extension of credit without notice"; "cancel its agreement to extend credit and re-evaluate the credit worthiness of [Innovative] under its new . . . ownership"; and "refuse to make future advances." *Id*. The line of credit agreement was signed by Thornton. *Id.*

Based on the terms of the contract, Nudo's decision to cancel its line of credit to Innovative and withhold future advances is permitted conduct. Because Innovative's allegations do not establish that Nudo's actions regarding the line of credit revocation were unjustified, improper, or wrongful, the Court GRANTS Nudo's motion to dismiss the tortious interference claims.

**C. Innovative alleges facts to maintain its unjust enrichment claim.**

Nudo asserts that a dismissal of the other claims in the complaint is fatal to the unjust enrichment claim. Dkt. 16 at 16. Nudo also claims that unjust enrichment is inapplicable when a contract exists between the parties. *Id*. at 17–18.

"Unjust enrichment is a valuable basis for a claim to fill in the cracks where other causes of action fail to achieve justice." *Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 672 (9th

[3] The Court's ruling is limited only to the line of credit agreement.

Cir. 2018) (citation omitted). An unjust enrichment claim "is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151 (9th Cir. 1996) (citation omitted). A plaintiff who is party to a valid contract may not bring a claim for unjust enrichment for issues arising under the contract's subject matter. *Hold Sec. LLC v. Microsoft Corp.*, 705 F. Supp. 3d 1231, 1244 (W.D. Wash. 2023).

Here, although the parties had a line of credit agreement, it is unclear whether the parties had a contract governing their working relationship. Dkt. 17-1. Furthermore, the complaint alleges the companies had a collaborative relationship spanning over 25 years. Dkt. 1 ¶¶ 3.1, 3.6. Drawing all inferences in favor of the plaintiff at the pleading stage, the Court DENIES Nudo's motion to dismiss the unjust enrichment claim.

## VI. CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. Defendant Nudo's motion to dismiss (Dkt. 16) is GRANTED IN PART and DENIED IN PART.
2. The misappropriation and tortious interference claims are DISMISSED WITHOUT PREJUDICE and with leave to amend. The request to dismiss the unjust enrichment claim is DENIED.
3. If Innovative wishes to amend its complaint to cure the deficiencies identified in this Order, it may do so no later than December 3, 2026.
4. Because at least one claim will proceed past the pleading stage even without amendment, the Clerk is directed to enter a new set of initial case scheduling deadlines. *See* Dkt. 23.

Dated this 12th day of November, 2026.

Tiffany M. Cartwright
United States District Judge